1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ANDRE LAWRENCE,                    Case No. EDCV 14-1331 DMG (SS)

12              Plaintiff,
                                        **MEMORANDUM DECISION AND ORDER**
13        v.
                                        **DISMISSING FIRST AMENDED**
14   JOHN MCMAHON, et al.,
                                        **COMPLAINT WITH LEAVE TO AMEND**
15              Defendants.

16

17                                 **I.**

18                            **INTRODUCTION**

19

20        On June 28, 2014, Andre Lawrence ("Plaintiff"), a pretrial

21   detainee proceeding pro se, constructively filed a civil rights

22   complaint pursuant to 42 U.S.C. § 1983.  (Dkt. No. 3).  On August

23   8, 2014, the Court dismissed the Complaint with leave to amend

24   due to certain pleading defects.[1]  (Dkt. No. 7).  The Court

25   received Plaintiff's First Amended Complaint ("FAC") on August

26

27   _____
     [1]   Magistrate judges may dismiss a complaint with leave to
28   amend without approval of the district judge.  See McKeever v.
     Block, 932 F.2d 795, 795 (9th Cir. 1991).

27, 2014.[2]  (Dkt. No. 9).  Because Plaintiff has cured only some, but not all, of the pleading defects previously identified by the Court, the FAC is dismissed, with leave to amend.

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee.  28 U.S.C. § 1915A(a).  This Court may dismiss such a complaint, or any portions thereof, before service of process if it concludes that the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

## II.

### ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The FAC names as defendants three employees of the San Bernardino County Sheriff's Department, the latter two of whom worked during the relevant period at the West Valley Detention Center ("WVDC"), where Plaintiff is currently housed:  San Bernardino County Sheriff John McMahon, Deputy Jones, and Reverend Scraggs (collectively, "Defendants").  (FAC at 1, 3).[3]

---

[2] The Court notes that although the Court filed the FAC on August 27, 2014, the signature block indicates that Plaintiff signed the FAC on August 28, 2014.  (See FAC at 6).

[3]  The Court will cite to the FAC as though it were consecutively paginated.

1    Plaintiff sues all Defendants in both their individual and
2    official capacities. (Id. at 3).

3

4        Although Plaintiff is "not Jewish," he "practice[s] the
5    Jewish faith." (Id. at 4). On May 23, 2014, Plaintiff requested
6    a kosher diet. (Id.). On May 29, 2014, Reverend Scraggs, after
7    questioning Plaintiff about his faith, informed Plaintiff that
8    despite the apparent sincerity of his beliefs, he could not
9    receive a kosher diet because the prison does not have a resident
10   rabbi and it would take at least two weeks to contact a synagogue
11   to see if Plaintiff is "on a list" so that his request for a
12   kosher diet could be approved. (Id.). However, Reverend Scraggs
13   "never got back" to Plaintiff. (Id.).

14

15       Plaintiff immediately filed a grievance. On May 30, 2014,
16   Deputy Jones answered the grievance after verbally informing
17   Plaintiff that his request would be deemed "unfounded." (Id.).
18   Deputy Jones also stated that "per his supervisor," Plaintiff's
19   request was a "dead issue" and "there were no further levels of
20   appeal." (Id.).

21

22       The FAC's allegations concerning Sheriff McMahon are faded
23   to the point of near illegibility. However, Plaintiff notes that
24   the Sheriff is in charge of all of his deputies and the staff at
25   the WVDC. (Id. at 5). As such, Plaintiff contends that the
26   Sheriff is responsible for his subordinates' actions and the
27   policies of the facilities under his supervision. (Id. at 5).

28

1    Although the FAC is not entirely clear, Plaintiff appears to
2    raise three claims, one against each Defendant.  First, Plaintiff
3    alleges that Reverend Scraggs violated his rights under the
4    Religious Land Use and Institutionalized Person Act, 42 U.S.C.
5    §§ 2000cc et seq. ("RLUIPA"), by "unjustifiably denying [him] a
6    kosher diet."  (FAC at 3).  Second, Plaintiff appears to argue
7    that Deputy Jones violated his due process rights by denying him
8    "a fair and impartial investigation of [his] grievance."  (Id.).
9    Third, Plaintiff claims that Sheriff McMahon, as Defendants'
10   supervisor and "executor" of WVDC policy, is ultimately
11   responsible for the failure of his "administration and staff" to
12   conduct a "fair grievance investigations [sic]."  (Id.).

14   Plaintiff prays for injunctive relief, but not damages.
15   Plaintiff seeks an order requiring the WVDC to provide him a
16   kosher diet and to employ a rabbi.  (See id. at 6).  He also
17   demands that WVDC "change the actions of its staff and
18   administration in regards to blocking the processes of the
19   grievance system."  (Id.).

21                               III.

22                            DISCUSSION

24   Under 28 U.S.C. § 1915A(b), the Court must dismiss the FAC
25   due to defects in pleading.  Pro se litigants in civil rights
26   cases, however, must be given leave to amend their complaints
27   unless it is absolutely clear that the deficiencies cannot be
28   cured by amendment.  See Lopez, 203 F.3d at 1128-29.

1   Accordingly, the Court grants Plaintiff leave to amend, as

2   indicated below.

3

4   **A.   Plaintiff Fails To State A Claim Based On The Screening And**

5   **Investigation Of His Grievances**

6

7       Plaintiff contends that Deputy Jones violated his rights by

8   denying him a fair and impartial investigation of his grievance.

9   (FAC at 3). Plaintiff further argues that Sheriff McMahon, as

10  Deputy Jones's superior, is responsible for this improper

11  grievance "policy." (Id.). As the Court has previously

12  explained, however, claims that a defendant improperly screened

13  or investigated grievances, standing alone, do not state a

14  violation of constitutional rights.

15

16      A prisoner must "exhaust his administrative remedies before

17  filing a lawsuit concerning prison conditions." Sapp v.

18  Kimbrell, 623 F.3d 813, 821 (9th Cir. 2010) (citing 42 U.S.C. §

19  1997e(a)). However, the existence of a prison grievance

20  procedure does not create any substantive rights enforceable

21  under the Due Process Clause. See, e.g., Antonelli v. Sheahan,

22  81 F.3d 1422, 1430 (7th Cir. 1996) ("With respect to the Due

23  Process Clause, any right to a grievance procedure is a

24  procedural right, not substantive one. Accordingly, a state's

25  inmate grievance procedures do not give rise to a liberty

26  interest protected by the Due Process Clause.") (citations

27  omitted); Doe v. Moore, 410 F.3d 1337, 1350 (11th Cir. 2005)

28  ("State-created procedural rights that do not guarantee a

particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory.") (internal quotation marks omitted).

Consequently, an inmate does not have a right to any particular grievance procedure or result. See, e.g., Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.") (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)); Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (an inmate "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction."). As such, a prison official's failure to properly process a grievance, without more, is insufficient to establish liability under section 1983. See Buckey v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

Plaintiff's claims against Deputy Jones and Sheriff McMahon are based entirely on the processing of Plaintiff's grievance. However, Plaintiff does not have a constitutional right to any particular grievance process or result. Accordingly, as the Court has previously instructed, Plaintiff's claims against Deputy Jones and Sheriff McMahon based on the handling of his grievance must be dismissed. Plaintiff is cautioned that in any amended complaint, he should omit claims for which he has no legal or factual basis.

\\

\\

**B.** **There Is No Vicarious Liability In Section 1983 Cases**

Plaintiff appears to allege that Sheriff McMahon is liable only because as the head of the Sheriff's Department, he is vicariously responsible for any acts committed or policies implemented by his subordinates.  (See FAC at 3).  However, Plaintiff is once again advised that there is no vicarious liability under section 1983.  As such, a supervisor cannot be held liable simply because a subordinate violated plaintiff's rights.   Therefore, even if Plaintiff were able to assert a cognizable claim again Deputy Jones, Sheriff McMahon would not be liable merely because he is Deputy Jones's superior.

To demonstrate a civil rights violation against government officials, a plaintiff must show either direct, personal participation or some sufficient causal connection between the official's conduct and the alleged constitutional violation.  See Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).  To be held liable, a supervising officer has to personally take some action against the plaintiff or "set in motion a series of acts by others . . . which he knew or reasonably should have known, would cause others to inflict the constitutional injury" on the plaintiff.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal quotations omitted).  As the Ninth Circuit has explained, "[s]upervisory liability [may be] imposed against a supervisory official in his individual capacity [only] for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the

1  constitutional deprivations of which the complaint is made, or

2  for conduct that showed a reckless or callous indifference to the

3  rights of others."   Preschooler II v. Clark County Bd. Of

4  Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007).

5

6      Whether or not Deputy Jones caused Plaintiff a harm

7  cognizable under section 1983, Sheriff McMahon would be liable

8  only if he either personally participated in the violation or

9  committed some act as a supervisor that directly led to the

10 constitutional violation.   Plaintiff generically alleges that

11 Sheriff McMahon violated his rights by inadequately supervising

12 "his administration and staff."   (FAC at 3).   However, Plaintiff

13 does not state what specifically was inadequate about Sheriff

14 McMahon's supervision that led directly to the harm alleged.   To

15 state any sort of claim against Sheriff McMahon (or any other

16 Defendant), Plaintiff must allege specific facts showing what he

17 personally did or did not do, when and where, and how his action

18 or inaction directly caused a violation of Plaintiff's civil

19 rights.   Accordingly, the FAC must be dismissed, with leave to

20 amend.   If Plaintiff fails to correct this defect, Plaintiff is

21 advised that the Court will recommend dismissal of these claims

22 with prejudice and without leave to amend.

23

24 C.   **The FAC Fails To State A Claim Against Deputy Jones And**

25   **Sheriff McMahon In Their Official Capacity**

26

27     Similarly, even if the improper screening or investigation

28 of a grievance could form the basis of a claim under section

1  1983, which it cannot, the FAC would still fail to state a claim

2  against Deputy Jones and Sheriff McMahon in their official

3  capacities.[4]   A suit against a defendant in his individual

4  capacity "seek[s] to impose personal liability upon a government

5  official for actions he takes under color of state law . . . .

6  Official-capacity suits, in contrast, generally represent only

7  another way of pleading an action against an entity of which an

8  officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165

9  (1985) (internal quotation marks omitted; emphasis added);

10 see also Community House, Inc. v. City of Boise, Idaho, 623 F.3d

11 945, 966-67 (9th Cir. 2010) (an official capacity suit is treated

12 as a suit against the entity).   To the extent that Plaintiff's

13 allegations against Deputy Jones and Sheriff McMahon in their

14 "official capacity" may be construed as an attempt to sue the

15 County of San Bernardino for violations of Plaintiff's

16 constitutional rights under section 1983, however, the FAC fails

17 to state a claim and must be dismissed with leave to amend.

18

19    As the Court has previously explained, a local government is

20 liable in a section 1983 action only if the plaintiff can

21 establish that the municipality or county sued "had a deliberate

22 policy, custom, or practice that was the 'moving force' behind

23 the constitutional violation he suffered."  Galen v. County of

24 Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007) (quoting Monell v.

25 Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978)).  In Monell,

26 the Supreme Court specifically rejected governmental liability

27 _____

28 [4] As previously mentioned the FAC purports to sue all Defendants
in both their individual and official capacities.  (FAC at 3-4).

9

1    based on the doctrine of <u>respondeat superior</u>, or vicarious

2    liability.   <u>Monell</u>, 436 U.S. at 691-94.   Therefore, a local

3    government cannot be held liable under section 1983 merely

4    because one or more of its employees violated a person's rights.

5    <u>Id.</u>

6

7        The FAC does not identify, as required by <u>Monell</u>, any

8    specific policies or practices in the County of San Bernardino

9    that caused Plaintiff's alleged injuries.   Furthermore, Plaintiff

10   is cautioned that "[a] plaintiff cannot prove the existence of a

11   municipal policy or custom based solely on the occurrence of a

12   single incident of unconstitutional action by a non-policymaking

13   employee." <u>Davis v. City of Ellensburg</u>, 869 F.2d 1230, 1233 (9th

14   Cir. 1989); <u>see also</u> <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir.

15   1996) ("Liability for improper custom may not be predicated on

16   isolated or sporadic incidents; it must be founded upon practices

17   of sufficient duration, frequency and consistency that the

18   conduct has become a traditional method of carrying out

19   policy.").   In any amended complaint, assuming that Plaintiff is

20   able to identify a cognizable harm, Plaintiff must either

21   identify the specific County polices or practices that caused his

22   injury or limit his suit to claims against Defendants in their

23   individual capacity only.   Accordingly, the FAC must be

24   dismissed, with leave to amend.   Plaintiff should omit claims

25   that lack a legal basis.   If Plaintiff again pleads such claims,

26   he is warned that the Court will recommend dismissal of such

27   claims with prejudice and without leave to amend.

28

1    **D.**    **The FAC's RLUIPA Claim Against Reverend Scraggs In His**

2          **Individual Capacity Is Improper**

3

4       The FAC alleges that Reverend Scraggs violated Plaintiff's

5 "R.L.U.I.P.A. rights by unjustifiably denying [him] a kosher

6 diet." (FAC at 3). Accordingly, the FAC's religious exercise

7 claim appears to be grounded solely in Plaintiff's statutory

8 rights under RLUIPA, not his First Amendment constitutional

9 rights under section 1983. To state a claim under RLUIPA, an

10 inmate plaintiff must allege facts establishing that the

11 "government" substantially burdened the exercise of his religious

12 beliefs.[5]  <u>See</u> <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th

13 Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2)). Construed

14 liberally, Plaintiff's RLUIPA claim adequately, if minimally,

15 appears to state a claim as Plaintiff alleges that in furtherance

16 of his sincerely held religious beliefs, he presented his request

17 for kosher meals to Reverend Scraggs, who failed to grant the

18 request or follow through.

19

20       However, if Plaintiff is in fact raising his religious

21 exercise claim solely under RLUIPA, as the FAC suggests, the

22 claim against Reverend Scraggs in his individual capacity is

23 improper. RLUIPA was "enacted pursuant to Congress's spending

24 and commerce powers," <u>Wood v. Yordy</u>, 753 F.3d 899, 902 (9th Cir.

25 _____

   [5] The statute defines the term "government" to mean "(i) a State,

26 county, municipality or other governmental entity created under

   the authority of a State; (ii) any branch, department, agency,

27 instrumentality, or official of an entity listed in clause (i);

   and (iii) any other person acting under color of State law

28 . . . ."  42 U.S.C. § 2000cc-5(4)(A).

2014), and applies in relevant part to any "program or activity that receives Federal financial assistance."  42 U.S.C. § 2000cc-1(b)(1).  The Ninth Circuit has explained that because individual employees are not the governmental "recipients" of federal funds, they are not liable in their personal capacities under RLUIPA.  See Wood, 753 F.3d at 904 ("[T]here is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity. . . . . The statute does not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received.").  To the extent that the FAC's religious exercise claim is brought solely under RLUIPA, Plaintiff may not sue Reverend Scraggs in his individual capacity.[6]

## IV.

### CONCLUSION

For the reasons stated above, the FAC is dismissed with leave to amend.  If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Second Amended Complaint.  In any amended complaint, Plaintiff shall **cure the defects** described above.  **Plaintiff shall not include new Defendants or new**

---

[6] The Court notes, however, that a constitutional claim under section 1983 may be asserted against Reverend Scraggs in his individual capacity if Plaintiff is able to allege facts showing that Reverend Scraggs personally violated his First Amendment rights.  See Starr, 652 F.3d at 1205-06.

**allegations that are not reasonably related to the claims asserted in the original Complaint.** The Second Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Second Amended Complaint" and the case number assigned to this action. It shall not refer in any manner to the original Complaint or FAC. Plaintiff shall limit his action only to those Defendants who are properly named in such a complaint, consistent with the authorities discussed above.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should make clear the nature and grounds for each claim and specifically identify the Defendants he believes are liable for that claim. Plaintiff shall not assert any claims for which he cannot allege a proper factual or legal basis.

**Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff is further advised that if he no**

longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1).  A form Notice of Dismissal is attached for Plaintiff's convenience.

DATED:  September 9, 2014                    _____/S/_____
                                             SUZANNE H. SEGAL
                                             UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**